## Ellen M. McDonald, Executrix, etc., v. Mary A. Danahy.

1. Parol Evidence—*Not Admissible to Vary the Terms of a Written Instrument.*—Parol evidence is not admissible to contradict the written assignment of a certificate of stock or the legal effect of such assignment, but it is admissible for the purpose of ascertaining whether the certificate of stock assigned was converted by the plaintiff's testate in his lifetime to his own use without the knowledge or consent of the owner.

2. Measure of Damages—*Conversion of Capital Stock in an Incorporated Company.*—Upon the trial of a claim in probate against the executrix of a deceased person, for the conversion by him in his life time, of shares of stock in an incorporated company, where the evidence shows that the assets of the company were some $230,000 above its capital stock and that semi-annual dividends at the rate of from six to ten per cent per annum were paid, a verdict for an amount equal to the face value of the stock is fully justified.

Claim in Probate.—Error to the Circuit Court of Kane County; the Hon. Henry B. Willis, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

Chas. Wheaton, attorney for plaintiff in error.

J. J. O'Connor, attorney for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This suit originated in a claim filed against the estate of Daniel Danahy, deceased, in the County Court of Kane County, by his sister, Mary A. Danahy, January 13, 1898. The claim filed was for the sum of $7,000, of which $2,500 was for the value of twenty-five shares of the capital stock of the Aurora Cotton Mills, of Aurora, Illinois, of the par value of $100 each, of which defendant in error claimed to be the legal owner. This stock she alleged in her statement of claim, her brother obtained possession of without paying her any consideration therefor and without her knowledge or consent, and pledged as collateral security for a loan of $1,500, appropriating the money to his own use. She also claimed $4,000 for money of hers which she alleged her brother drew from the First National Bank of Aurora, and $500, said to have been drawn from the German American Bank of Aurora, for his own use, without her knowledge or consent, and failed to repay to her. Upon the trial in the Circuit Court, to which the case was appealed, the court withdrew from the jury all evidence relating to the claim of defendant in error for money alleged by her to have been received and retained by Daniel Danahy, and directed them to disregard such claim. This left only the question as to whether appellee was entitled to recover the value of the twenty-five shares of the cotton mill stock above mentioned, to be determined by the jury. There was a verdict in favor of defendant in error for $2,537.50 of which the sum of $37.50 was remitted and a judgment entered for $2,500.

Mary A. Danahy, who, as a member of a religious order, is also known as Sister Mary Arthur, had, on February 27, 1887, given written directions to the First National Bank of Aurora to pay and charge to her account all checks signed in her name by " Dan Danahy," she at that time having on deposit in the bank some $27,000. On September 4, 1890, she executed a power of attorney to " Dan Danahy," authorizing him, among other things, to sell, transfer and assign any and all notes, bonds, mortgages or stock, belonging to her.

She appears from the evidence to have been the owner of two certificates of stock of the Aurora Cotton Mills of twenty-five shares each, issued to her in 1888. Some time thereafter she assigned one of the certificates of twenty-five shares to her brother, Dan Danahy, the assignment being witnessed by "Mrs. Dan Danahy," his wife, who is now Mrs. McDonald, the plaintiff in error. In 1895 Daniel Danahy pledged the twenty-five shares of cotton mill stock assigned to him, as collateral security for a loan of $1,500, to the Second National Bank of Aurora. To pay that loan he negotiated another for a like amount of L. Lancaster, who took the same stock, when released by the bank, as collateral security for his loan. After the death of Daniel Danahy, Lancaster filed his note as a claim against the estate. The court, however, refused to allow it and directed him to sell the stock for an amount not less than his claim. This he proceeded to do, selling the same to his son-in-law, E. S. Hanna, for $1,771.25, which was the amount of the principal and interest due on the note.

Plaintiff in error claims that parol evidence was admitted by the court to contradict the written assignment of the certificate of stock and the legal effect of such assignment. It is true that parol evidence is not admissible to vary the terms of a written instrument or the legal effect thereof, but evidence was not admitted in this case for that purpose. The purpose of the evidence complained of here was not to change the terms of the assignment, but to ascertain whether the certificate of stock so assigned was converted by Daniel Danahy to his own use without the knowledge or consent of defendant in error, and was therefore properly admitted. Upon the trial the court admitted proof of the value of the assets of the cotton mills to assist the jury in fixing the value of the stock, and this is also complained of as error. Defendant in error was entitled to the value of the stock at the time it was converted and was not confined to its value at the time of its sale by Lancaster. There was no proof of the actual value of the stock, consequently we are of opinion that evidence of the value of the

assets of the cotton mills, from the time the stock was first pledged in 1895, was proper.

Plaintiff in error insists that the verdict was excessive. It appeared, however, from the evidence, that the assets of the concern were some $230,000 above the capital stock; that semi-annual dividends at the rate of from six to ten per cent per annum were paid, there being only one period of six months in which no dividend was paid, since 1894; that the $2,500 in stock was taken as collateral security, both by the bank and Mr. Lancaster, for the loan of $1,500. Under such circumstances we think a verdict of $2,500, which was the face value of the stock, was fully justified. This was the amount which remained after the remittitur of $37.50 was entered and for which judgment was given.

Complaint is made of the first two instructions given for defendant in error, which left it to the jury, to be decided by them, whether or not the stock in question was in fact the property of defendant in error, or of said Daniel Danahy, on the ground that the instructions disregarded the legal effect of the assignment upon the stock. The question as to which one of the two was the rightful owner of the certificate, was, under all the circumstances of the case, a question of fact, and the instructions named were therefore properly given.

The verdict in this case was fully sustained by the evidence and we find no substantial error in the record. The judgment of the court below is therefore affirmed.